**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

OCT 06 2005

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY:  s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re:<br><br>**OLD BRIDGE CHEMICALS, INC.**, a New Jersey Corporation, **MADISON INDUSTRIES, INC.**, a New Jersey Corporation, and **ARNET REALTY CO. LLC**, a New Jersey Limited Liability Company,<br><br>                **Debtors.** | Case Nos.:   03-51134 (DHS)<br>                 03-51135 (DHS)<br>                 04-43573 (DHS)<br><br>(Jointly Administered)<br><br><br>Judge: Donald H. Steckroth, U.S.B.J. |

**OPINION**

**APPEARANCES:**

Norris, McLaughlin & Marcus
Gary N. Marks, Esq.
P.O. Box 1018
Somerville, NJ 08876-1018
*Counsel for Debtors/Debtors-in-Possession*

Robinson Brog Leinwand Greene Genovese & Gluck P.C.
Scott A. Steinberg, Esq.
Fred B. Ringel, Esq.
1345 Avenue of the Americas
New York, NY 10105-0143
*Counsel for the Estate of Arnold Asman*

Porzio, Bromberg & Newman
John S. Mairo, Esq.
100 Southgate Parkway
Morristown, NJ 07962-1997
*Counsel for Official Committee of Unsecured Creditors*
*of Old Bridge Chemicals, Inc.*

Ravin Greenberg PC
Bruce J. Wisotsky, Esq.
101 Eisenhower Parkway
Roseland, NJ  07068
*Counsel for Official Committee of Unsecured Creditors*
*of Madison Industries, Inc.*

Lowenstein Sandler PC
Sharon L. Levine, Esq.
65 Livingston Avenue
Roseland, NJ 07068
*Counsel for Ciba Specialties Chemicals Corporation*

Donald F. MacMaster, Esq.
Office of the U.S. Trustee
One Newark Center
Suite 2100
Newark, NJ 07102-5504
*United States Trustee*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion filed by Debtors Old Bridge Chemicals, Inc., Madison Industries, Inc., and Arnet Realty Company (hereinafter collectively the "Debtors") for an order (A) clarifying the Court's prior order as dispositive of the Estate of Arnold Asman's status as an unsecured creditor and (B) subordinating the claim of the Estate of Arnold Asman pursuant to 11 U.S.C. § 510(b). The Estate of Arnold Asman (hereinafter the "Asman Estate") opposes the Debtors' motion. The Creditor Committees of Old Bridge Chemicals, Inc. and Madison Industries, Inc. support the motion.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). *See* 28 U.S.C. § 1334(a) (West 2005); 28 U.S.C. § 157(a) (West 2005). This matter is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A), (B), and (O). *See generally* 28 U.S.C. § 157(b) (West 2005). Venue is appropriate under 28 U.S.C. § 1408. The following constitute the Court's findings of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. *See* Fed. R. Bankr. P. 7052 (West 2005).

**I.    Statement of Relevant Facts and Procedural History**

The relevant underlying facts are largely undisputed. In 1964, Arnold Asman invested capital in the Debtors' business and, until his death in 1999, owned seventeen percent (17%) of Old Bridge Chemicals, Inc., Madison Industries, Inc., and Arnet Realty Company. (*See Debtors' Motion for an Order (A) Clarifying the Court's Prior Order as Dispositive of the Estate of Arnold Asman's Status as an Unsecured Creditor and (B) Subordinating the Claim of the Estate of Arnold Asman Pursuant to 11 U.S.C. § 510(b)*, ¶ 2) (hereinafter "*Debtors' Motion*"). Upon his death, his estate succeeded to his interests in the Debtors' business. (*Debtors' Motion*, ¶ 2). After Arnold Asman's death in 1999, the

3

Asman Estate commenced litigation against the Debtors under the New Jersey Oppressed Minority Shareholder Statute. (*Debtors' Motion*, ¶ 3).

The Debtors and the Asman Estate settled the state court litigation in June of 2002. (*Debtors' Motion*, ¶ 4). The pertinent terms of the settlement are as follows. The Asman Estate accepted a "buy-out" of its entire interest in the Debtors' business for $1.3 million, payable in equal monthly installments over a ten-year period commencing August 1, 2002. (*See Transcript of Settlement Agreement*, pg. 10) (hereinafter "*Transcript*"). In order to secure the payment terms, the settlement agreement contemplated that the Asman Estate was to receive the following security interests: 1) a promissory note secured by a first mortgage on the real property owned by Arnet Realty Company; 2) a second priority lien in the accounts receivable "and all proceeds of the four Madison Companies"; and 3) a third priority lien in the machinery and equipment of the four Madison Companies. (*Transcript*, pgs. 10-13).

Moreover, the settlement agreement acknowledged that $1.3 million of the debt owed by the Debtors to the Asman Estate "arises out of a settlement of a claim arising from a willful and malicious injury by the Debtor companies to the property of the Asman Estate, which final $1.3 million dollars of the obligation shall be deemed non-dischargeable in bankruptcy pursuant to Section 5.32(a) [sic] of the U.S. Bankruptcy Code." (*Transcript*, pg. 11). The settlement agreement also contemplated that

> 17 percent of the capital stock of the four Madison companies and Arnet Realty shall be held in escrow by Peri and Stewart, LLC[1] until [the] third anniversary of the settlement. Thereafter, seven shares shall be transferred to defendants or their designee. The remaining ten shares shall be held . . . pursuant to a pledge agreement securing the amounts owed by

---

[1] Peri and Stewart, LLC is the law firm that represented the Asman Estate in the state court litigation.

4

> defendants to plaintiff. Asman has the immediate right to vote the pledged stock upon any default or arrears continuing for more than 30 days.

[(*Transcript*, pg. 13)].

The key terms of the settlement agreement are as follows:

> The Debtors agree to repurchase the stock owned by the Asman Estate for $1.3 million, payable over ten years.
>
> The Debtors were to issue and the Asman Estate was to receive a promissory note in the amount of $1.3 million (the "Note") on account of the repurchase obligation.
>
> The debt evidenced by the Note was to be secured by liens and security interests in certain of the Debtors' assets.
>
> The Asman Estate relinquished its interest in the stock to an escrow agent and had no right to vote the shares except upon default by the Debtors.
>
> The Asman Estate had no right to participate in profits, or obligation to share in losses.

The parties do not dispute that "[a]lthough the Debtors agreed that the payments to the Asman Estate were to be secured by liens and security interests in the Debtors' accounts receivable, machinery and equipment and a mortgage on the real estate owned by Arnet, the mortgage and security interests were never recorded." (*See Objection of the Estate of Arnold Asman to Debtors' Motion for an Order (A) Clarifying the Court's Prior Order as Dispositive of the Estate of Arnold Asman's Status as an Unsecured Creditor and (B) Subordinating the Claim of the Estate of Arnold Asman Pursuant to 11 U.S.C. § 510(b)*, pg. 3) (hereinafter "*Asman Obj.*"). In addition, the promissory note was never executed but the Debtors timely tendered the required payments under the settlement agreement from

August, 2002 through November, 2003. The Debtors ceased making payments in November, 2003. (*Asman Obj.*, pg. 3).

Old Bridge Chemicals, Inc. and Madison Industries, Inc. commenced two separate bankruptcy cases by filing voluntary petitions under Chapter 11 of the Bankruptcy Code on December 23, 2003. (*Debtors' Motion*, pg. 3). Arnet Realty Company filed a voluntary petition under Chapter 11 of the Code on October 20, 2004. (*Debtors' Motion*, pg.3). Pursuant to orders entered by the Court on December 29, 2003 and March 15, 2005, the three Chapter 11 cases were administratively consolidated. (*Debtors' Motion*, pg. 3).

On April 12, 2004, the Asman Estate filed a proof of claim in the amount of $1.3 million as a secured creditor against Old Bridge Chemicals, Inc. and Madison Industries, Inc. (*Asman Obj.*, pg. 3). On January 5, 2005, the Asman Estate also filed a proof of claim as a secured creditor against the estate of Arnet Realty Company. (*Asman Obj.*, pg. 3).

On October 29, 2004, the Debtors filed a motion seeking to substantively consolidate the bankruptcy estates of Old Bridge Chemicals, Inc., Madison Industries, Inc., and Arnet Realty Company. On March 15, 2005, the Court entered an Order and issued an opinion granting the motion to substantively consolidate the three bankruptcy estates. On March 24, 2005, counsel for the Estate of Arnold Asman filed a Notice of Appeal to the United States District Court appealing the Bankruptcy Court's March 15, 2005 Order substantively consolidating the three bankruptcy estates.

According to the Debtors, while the March 15, 2005 opinion "clearly determined the Asman Estate to be an unsecured creditor," the Asman Estate "persists in its desire to be treated as a secured creditor." (*Debtors' Motion*, pg. 3). Consequently, the Debtors filed the present motion "for an order clarifying the

6

Court's opinion finding that the Asman Estate is an unsecured creditor and subordinating the claim of the Asman Estate" prior to plan confirmation. (*Debtors' Motion*, pg. 3). By letter dated September 19, 2005, the Court notified the parties that based upon the nature of the relief sought by the Debtors' motion, the Court would "treat the clarification aspect of the Debtors' motion as a motion objecting to the Asman Estate's secured proof of claim." The Court provided the Asman Estate with additional time to respond to the substance of the Debtors' motion. However, the Asman Estate elected not to file any additional response to that aspect of the Debtors' motion. Indeed, the Asman Estate does not contest its status as an unsecured creditor of the Debtors' bankruptcy estates based upon the failure to perfect its various security interests.

On September 15, 2004, the Debtors filed a Plan of Reorganization. The Plan was thereafter modified and provides for the subordination of the Asman Estate's claim pursuant to 11 U.S.C. § 510(b). In connection therewith, Debtors filed the within motion.

As a result of the acknowledgment that the claim is unsecured, the only issue remaining before the Court is whether the claim of the Asman Estate should be subordinated pursuant to § 510(b) of the Bankruptcy Code.

Against this background, the Court will turn to its legal conclusions.

**II.    Discussion**

Section 510(b) of the Bankruptcy Code provides as follows:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests

7

>   that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.
>
>   [11 U.S.C. § 510(b) (West 2005)].

Bankruptcy Rule 7001(8) requires the commencement of an adversary proceeding to subordinate any allowed claim or interest, except when a Chapter 11 Plan provides for subordination. Since a Plan has been filed in this matter providing for subordination of the Asman Estate claim, an adversary proceeding is not required.

The Third Circuit Court of Appeals in *Baroda Hill Investments, Ltd. v. Telegroup, Inc. (In re Telegroup, Inc.)*, 281 F.3d 133, 141 (3d Cir. 2002), addressed § 510(b) of the Bankruptcy Code, stating it represents "a congressional judgment that, as between shareholders and general unsecured creditors, it is shareholders who should bear the risk of illegality in the issuance of stock in the event the issuer enters bankruptcy." Simply stated, the legislative policy behind the enactment of Section 510(b) is essentially "to prevent a disappointed shareholder from recouping the shareholder's investment on parity with unsecured creditors." *In re ALTA+CAST, LLC*, 301 B.R. 150, 154 (D. Del. 2003); *In re Telegroup*, 281 F.3d at 142. Consequently, the question for this Court to resolve is whether the settlement agreement between the parties, and the Asman Estate's resulting claim based upon the Debtors' breach of the settlement agreement, constitutes a claim "arising from" the rescission of a purchase or sale of a security of the debtor. *See* 11 U.S.C. § 510(b) (West 2005).

In *In re Telegroup, Inc.*, the Third Circuit Court of Appeals, after recognizing the phrase "arising from" in § 510(b) is ambiguous, concluded that the phrase "arising from" requires "some nexus or causal relationship between the claims and the purchase of the securities, but not as limiting the nexus to claims

alleging illegality in the purchase itself." 281 F.3d at 138. The Third Circuit, therefore, "read the specific types of claims referred to in the legislative history [of § 510(b)] as 'arising from' the purchase or sale of a security as illustrative, not exhaustive, examples of claims that must be subordinated pursuant to § 510(b)." *Id.* at 140. Despite this expansive interpretation of § 510(b), however, the nexus or causal connection required by § 510(b) exists only when stock is *retained* by the claimant. *See*, *e.g.*, *Official Comm. of Unsecured Creditors v. Am. Capital Fin. Servs., Inc. (In re Mobile Tool Int'l, Inc.)*, 306 B.R. 778, 780 (Bankr. D. Del. 2004). In situations where "the stock is exchanged and a separate debt instrument is issued by the debtor, . . . the claimant is converted from an owner of stock to a creditor." *Id.* at 781. As the court in *In re Mobile Tool International, Inc.* noted, the Third Circuit's expanded interpretation of § 510(b) "only applies to claims held by shareholders and not to claims held by noteholders." *Id.* Consequently, the Third Circuit in *In re Telegroup, Inc.* "did not alter the long-standing principle that § 510(b) does not apply to instances when separate debt notes are actually issued in exchange for the stock." *Id.*

*In re Mobile Tool Int'l., Inc.* is instructive. There, the debtor entered into a stock repurchase agreement wherein the debtor agreed to repurchase from various officers certain stock issued by the debtor to those officers. The parties entered into a "Put Purchase Note Agreement" pursuant to which the officers received promissory notes in exchange for their stock interests. Upon the filing of the debtor's Chapter 11 proceeding, the officers filed claims based on the promissory notes. The debtor sought to subordinate those claims under section 510(b). The court held that the claims were not subject to § 510(b) subordination because such claims were based on promissory notes and not stock interests. *Id.* at 780. The court focused on the fact that the officers exchanged their stock for a debt instrument, i.e., the note,

9

and as such, became creditors. The court noted that in exchanging the stock for notes, the officers divested themselves of all indicia of ownership, and as such, there was no longer a nexus or causal relationship between the purchase and sale of the stock and the officers' claims based on the promissory notes. Id. at 781.

*In re Mobile Tool International, Inc.* properly refers to the decision in *Montgomery Ward Holding Corp. v. Schoeberl (In re Montgomery Ward Holding Corp.)*, 272 B.R. 836, 843 (Bankr. D. Del. 2001) which held that a claim based on the non-payment of a promissory note issued by a debtor to redeem or consummate the repurchase of its own stock is not a claim for damages "arising from" the purchase or sale of securities and as such, is not subordinated under 510(b). In *In re Montgomery Ward Holding Corp.*, the debtor sought to subordinate a former shareholder's claim in the amount of $1.43 million based on a defaulted promissory note issued by the debtor as payment for redeemed stock. The debtor argued that the claim constituted damages "arising from" the purchase or sale of its stock. The court held that the former shareholder was not a claimant trying to better his position, rather he was a creditor attempting to collect on a debt instrument relating to the sale of his stock to the debtor. *Id.*

Applying the foregoing principles to this matter, the Asman Estate's claim does not resemble the type of fundamental transaction that § 510(b) seeks to subordinate; namely, preventing former stockholders from reaping the benefit of unlimited profit without also fully accepting the inherent risk of ownership and the loss of their investment. Here, the parties settled their dispute and accepted purchase of the stock owned by the Asman Estate in exchange for the resulting debt owed to the Asman Estate.[2] Thus, the

---

[2] Although the intended promissory note was never actually executed by the Debtors, it is undisputed that the payments made by the Debtors were in fact made as if the promissory note had

Debtors intended that the Asman Estate divest itself of the ownership of the stock (and the right to management and any profit) when they purchased the securities. At that point, the Asman Estate no longer enjoyed the primary benefit of stock ownership: the potential for profits. This was eliminated by the settlement agreement. The Debtors' liability to the Asman Estate became fixed at a sum certain under the settlement agreement. The parties understood and intended that the Asman Estate ceased being a stockholder and became a creditor. Therefore, this Court finds that the claim of the Asman Estate is not the type of claim that § 510(b) of the Bankruptcy Code intends to be subordinated. Consequently, the Debtors' motion seeking the mandatory subordination of the claim of the Asman Estate pursuant to § 510(b) of the Code is denied.

      An Order in conformance with this Opinion has been filed this date and a copy is attached.

                                          s/ Donald H. Steckroth
                                          _____
                                          DONALD H. STECKROTH
                                          UNITED STATES BANKRUPTCY JUDGE

Dated: October 6, 2005

---

been executed and no dispute exists as to the underlying debt.